[No. 11889.   Department Two. — October 29, 1887.]

A. F. PRICE, APPELLANT, *v.* HATTIE BEAVER, RE-
SPONDENT.

SWAMP AND OVERFLOWED LAND — AFFIDAVIT OF PURCHASE — KNOWLEDGE OF LAND AND EXTERIOR BOUNDS. — The provision of section 3443 of the Political Code, requiring the person seeking to purchase swamp and overflowed land to state in his affidavit "that he knows the land applied for, and the exterior bounds thereof, and knows of his own knowledge that there are no settlers thereon," does not require that the applicant should know "of his own knowledge" the land applied for, and the exterior bounds thereof.   It is sufficient if the applicant obtains knowledge as to the identity of land from information derived from third persons.

ID. — PURCHASE BY WOMAN — STATEMENT IN AFFIDAVIT. — The provision of section 3444 of the Political Code, requiring a female applicant for the purchase of such land to show by her affidavit that she is entitled to purchase real estate in her own name, is sufficiently complied with by a statement in the affidavit that the applicant is "an unmarried woman, over the age of eighteen years, a citizen of the United States, and a resident of the state of California, of lawful age."

APPEAL from a judgment of the Superior Court of Tulare County, and from an order refusing a new trial.

The facts are stated in the opinion.

*C. E. Wilson,* and *C. A. Webb,* for Appellant.

*Lamberson & Taylor,* for Respondent.

BELCHER, C. C. — The defendant, on the twenty-fifth day of May, 1885, filed in the office of the surveyor-general of the state her application to purchase 640 acres of swamp and overflowed land, situate in Tulare County. The land sought to be purchased had been segregated as swamp and overflowed land, by authority of the United States, for more than six months, and was subject to sale by the state to any qualified applicant.   The defendant was qualified to purchase the land, and her affidavit properly stated all the facts required in such case to be stated therein.

The plaintiff, on the seventeenth day of June, 1885, made application to purchase the same land. He was also a qualified purchaser, and his application was sufficient and proper in form.

On demand of the plaintiff, the question as to which of the parties had the better right to purchase the land was referred by the surveyor-general to the Superior Court of Tulare County for determination. Proper pleadings were filed by the parties, and after a full hearing of the case, the court, among other things, found as follows:—

"3. That said defendant is a native-born citizen of the United States, and was, at the time of filing said application to purchase said land, of the age of thirty-one years, an unmarried female, and a resident of the state of California; that at said time she knew the land applied for, and the exterior bounds thereof, and knew of her own knowledge that there were no settlers thereon; that she desired to purchase said land under the law providing for the sale of swamp and overflowed and tide lands, and that she did not own swamp and overflowed lands which, together with that sought to be purchased and applied for in said application, would exceed 640 acres; that she did not know of any valid claim to the said land other than her own; and that there was no other valid claim to said land at the time said defendant filed her application, or at any time since.

"4. That the said land is not suitable for cultivation."

And as a conclusion of law the court further found:—

"That the application of the defendant, Hattie M. Beaver, to purchase the east half of section 19 and the west half of section 20, in township 22 south, range 23 east, Mount Diablo base and meridian (the land in question), is good and valid, and said defendant has a right to purchase the same, and that she is entitled to have her said application approved by the surveyor-general of said state of California," etc.

Judgment was entered in favor of the defendant. The plaintiff then moved for a new trial, and his motion being denied, appealed from the judgment and order.

It is claimed for the appellant that the finding "that at said time she knew the land applied for, and the exterior bounds thereof, and knew of her own knowledge that there were no settlers thereon," was not justified by the evidence; and this is the principal point made for a reversal of the judgment.

We do not think the judgment should be reversed for the reason urged. It was proved that the defendant was the widow of John H. Beaver, who had filed an application to purchase the land in question, and died in April, 1885. The defendant was a witness in her own behalf, and on her direct examination testified that at the time of making her application she knew the land applied for, and knew the exterior bounds of the land, and that there were not any settlers on it at that time; that about a week before she made her application she went on the land with J. W. Beaver, the brother of her deceased husband, and went where he said the corners of the land were. On cross-examination she said that when she was on the land her brother-in-law showed her certain stakes, but she did n't remember the marks on them, and could n't say whether they were section stakes or not; that she depended on her brother-in-law, and as a matter of fact did not herself know any of the exterior boundary lines of the two half-sections applied for.

J. W. Beaver was called as a witness, and testified that about the 15th of May, 1885, he went with defendant to look at the land, and showed her at that time what he supposed to be the land now in controversy, and that he afterward went back to the place for the purpose of determining whether he had correctly shown her the land in controversy or not. On his cross-examination he said in substance that he found a section corner between sections 19 and 20; that there was a stake there with

marks on it, which he did not remember, and that he believed the stake was pulled up and lying by the corner; that he did not know whether the stake was a corner stake or not, and only judged from the marks; that he and defendant went over the land in search of the other corners, but he did not know that they found any stakes, except the one at the junction of sections 17, 18, 19, and 20; he thought they found a stake directly east, — a half-mile stake, — but as to that was not positive; that they did not measure or follow the exterior boundary lines of the land; that he informed defendant what he supposed to be the boundaries and boundary lines, but that he was not a surveyor, and had never seen the land surveyed, and did not at that time know its exterior boundaries; that he could see two or three miles in every direction, and did not see any evidence of any settlement, except what his brother had put there.

Another witness was called, and testified that he knew the land described in the complaint, and saw it surveyed; that he was with the surveyors, and saw them set the corner stake between sections 19 and 20 on the north; that about a month and a half before the trial he went on the land with J. W. Beaver for the purpose of showing it to him, and positively identifying it as the land which defendant made application to purchase; that he had lived on the land for five months, in a house which defendant's husband had built; that he found a stake at the northeast corner of section 19 which had been pulled up, but was lying on the ground just where it was stuck to mark the true corner.

This was substantially all the evidence introduced upon the question in hand, and in our opinion it was sufficient to justify the finding complained of.

It is true, the code requires any person desiring to purchase swamp and overflowed land to state in his affidavit " that he knows the land applied for, and the exterior bounds thereof, and knows of his own knowledge

that there are no settlers thereon." (Pol. Code, sec. 3443.) And it is also true that in cases of this kind each party is an actor, and must allege and prove that he has strictly complied with the law. But it is not required that the purchaser of swamp land shall know "of his own knowledge" the land applied for, and the exterior bounds thereof. Ordinarily he does not, and unless he is a skilled surveyor, must gain this information from others. Having gained it, however, he can and must then state, if such be the fact, that he knows of his own knowledge that there are no settlers on the land.

The defendant was shown by her brother-in-law what he supposed to be the corners and boundary lines of the land in controversy. She relied and acted upon the information thus received, and there was no attempt to show that it was not correct. It is not pretended that she did not go upon the land which she desired to purchase, nor that she was incorrectly informed as to its bounds or limits, nor that there were any settlers on the land. The claim is only that J. W. Beaver did not *at the time know* the true lines and corners, and so, however correct her information may have been, her application must fail. If this be the correct view, then it must follow that if defendant had employed a surveyor to show her the land, and he had made mistakes as to the corners and lines, and had incorrectly located its bounds, her application could be successfully assailed by any subsequent applicant. We do not think that such a result was intended by the law-makers, or should receive sanction from the courts.

The point is also made that the defendant's application was insufficient, because she did not state in her affid⋯it that she was entitled to purchase real estate in her ⋯vn name.

Defendant stated in her affidavit that "she is an unmarried woman, over the age of eighteen years, a citizen of the United States, and a resident of the state of California, of lawful age."

The code (Pol. Code, sec. 3444) provides: "If the applicant is a female, such affidavit must also show that she is entitled to purchase real estate in her own name."

It is urged that an unmarried woman, though she be more than eighteen years of age, and a citizen and resident of the state, is not necessarily entitled to purchase real estate in her own name, because "she may be incompetent,—an idiot or lunatic, for instance,"—and it is therefore necessary that she should state in her affidavit that she is entitled to purchase, etc.

There is nothing in this point. The code, as we have seen, says that the affidavit must *show* a female is entitled to purchase, not simply state that fact. The defendant's affidavit fully complied with the law in this respect, and was sufficient. She was presumed to be of sound mind, and was not called upon to negative in her affidavit the fact that she was an idiot or lunatic.

The judgment and order should be affirmed.

FOOTE, C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.