[Sac. No. 1426.   In Bank.—May 15, 1907.]

RICHARD P. HENSHALL, Appellant, v. CORINNE ANNA MARSH et al., Respondents.

SCHOOL LANDS—CERTIFICATE OF PURCHASE—PURCHASE FOR SOLE USE AND BENEFIT OF APPLICANT—AGREEMENT TO PAY FOR SERVICES IN LAND OFFICE—BORROWING MONEY TO PURCHASE.—A certificate of purchase of school lands is not rendered void on the ground that
CLI Cal.—19

the applicant did not apply to purchase the land for her own use and benefit, as required by section 3495 of the Political Code, merely by the fact that prior to her application she had obtained a description of the land from a third person, and had agreed to pay him for his services in attending to the matter for her in the land-office when the land was sold, nor by the fact that she had borrowed from him the money to pay for the land under an agreement to execute to him a mortgage on the land as security for the loan after she had received the certificate of purchase. Such agreements created mere personal obligations on the part of the applicant and did not give the person with whom they were made any interest in the land.

ID.—APPLICANT MAY BORROW MONEY TO PURCHASE.—There is no law which prevents a purchaser of land from the state from borrowing money with which to make payment for the land under an agreement to mortgage the land to secure its repayment after the certificate of purchase is obtained.

ID.—CONTEST AS TO RIGHT TO PURCHASE—INFERENCE FOR TRIAL COURT.—On a contest brought under section 3414 of the Political Code, involving conflicting applications to purchase a section of school land from the state, it was for the trial court to determine the inferences to be drawn from the facts that the applicant first in point of time had her attention called to the land by a third person; that she agreed to pay him for his services relative to it; that she borrowed through or from him the money to pay therefor, and that she sold the land to another person immediately on receiving the certificate of purchase. And where both of these persons testified positively that no arrangement for an interest in the land existed between them, a finding in conformity to their testimony will not be disturbed.

ID.—PURCHASE FOR SPECULATION—INTENT TO SELL AT TIME OF APPLICATION.—Under section 3495 of the Political Code, providing that an applicant to purchase school lands not suitable for cultivation, such as timber lands, must state in his affidavit "that he desires to purchase the same for his own use and benefit, and for the use or benefit of no other person or persons whomsoever, and that he has made no contract or agreement to sell the same," and section 3515 of the same code, providing that "certificates of purchase, and all rights acquired thereunder, are subject to sale, by deed or assignment," the fact that the applicant purchased the land solely with a view to speculation, and with the intention of selling the land, if a satisfactory price could be had, as soon as the certificate was obtained, does not invalidate the certificate.

ID.—FEMALE APPLICANT—AFFIDAVIT—RIGHT TO PURCHASE REAL ESTATE.—Under section 3496 of the Political Code a female applicant for the purchase of school lands must show in her affidavit that she was entitled to purchase real estate in her own name. A mere statement in her affidavit that she was entitled to purchase and

hold real estate in her own name, while imperfect, will not be held to invalidate her application to purchase, when it appears on the contest that she was an unmarried woman, and hence entitled to hold real estate.

APPEAL from a judgment of the Superior Court of Plumas County. C. E. McLaughlin, Judge presiding.

The facts are stated in the opinion of the court.

Towle & Henshall, and James W. Cochrane, for Appellant.

A. E. Bolton, for Respondents.

LORIGAN, J.—This action involves conflicting applications to purchase from the state a section of school land in Plumas County, and was brought upon a reference made to the superior court of said county by the surveyor-general of the state under section 3414 of the Political Code.

Upon the trial the superior court found, among other facts not involved on this appeal, that on April 15, 1902, the defendant, Corinne A. Marsh, made and, on April 16, 1902, filed in the land-office of the surveyor-general of the state, an affidavit and application to purchase the land in question, the affidavit, among other things, stating that she was over the age of twenty-one years, a native-born citizen of the United States, and for over fifteen years a resident of the state of California; that she desired to purchase the land described in said affidavit for her own use and benefit, and for the use and benefit of no other person or persons whomsoever, and that she had made no contract or agreement to sell the same; that said land was not suitable for cultivation and was timbered land.

The court found that these facts, set forth in her affidavit, were true, and particularly that at the time said defendant Marsh filed on said land she desired to purchase the same for her own use and benefit, and for the use and benefit of no other person or persons whomsoever; nor had she made any contract or agreement to sell the same.

In addition it was found that on August 23, 1902, her application to purchase was approved by the state surveyor-general, and on August 28, 1902, she presented a copy of such approval to the county treasurer of Plumas County, paid him the amount due for said land and the amount required

for a certificate of purchase; that on September 2, 1902, the registrar of the state land-office issued to her a certificate of purchase, and on the following day she sold and transferred by deed, for a valuable consideration, her certificate of purchase and all her rights thereunder, to the defendant Thomas B. Walker; that thereafter and on August 29, 1903, plaintiff filed his affidavit and application with the surveyor-general to purchase this same land from the state, together with a protest against the application by the defendant Marsh, which resulted in the reference for trial to the said court.

As conclusions of law the court found against the right of plaintiff, and in favor of the right of the defendant Marsh, to purchase the land in question; that the certificate of purchase issued to her was valid, and that the defendant Walker as the purchaser thereof from her was entitled to a patent for the land.

Judgment was accordingly entered in favor of defendants, and plaintiff appeals therefrom, his appeal being accompanied by a bill of exceptions.

The appellant attacks the principal findings in the case and insists that the evidence, instead of supporting them, shows that the certificate of purchase issued to defendant Marsh was void, because, first, said Marsh did not apply to purchase the land for her own use and benefit, within the meaning of section 3495 of the Political Code; secondly, that her affidavit accompanying her application to purchase did not show the necessary jurisdictional facts, and therefore did not constitute a legal foundation of a right of purchase; and, lastly, that it appears from the evidence that she applied to purchase the land for the benefit of a person named N. E. Sager as well as herself.

The first and last points made by appellant are based upon the testimony of the defendant Marsh and N. E. Sager, the only witnesses in the case speaking as to the circumstances surrounding the application and purchase from the state of the land, and its sale to the defendant Walker.

A reference to that testimony shows that when the defendant Marsh on April 16, 1902, applied to purchase the land she obtained a description of it from a friend of the family, N. E. Sager. She prepared the application, and sent it to the land-office herself, inclosing therewith the requisite fee of twenty-

five dollars from money she had saved from her earnings. She testified that she had no agreement with any one to take up the land for his use and benefit; no agreement with any one that after taking it up she should turn it over to them or dispose of it to them; that her object in seeking to purchase it was because she thought she was entitled to take it up; that she took it up for her own use and benefit, knowing that she had a right at some future time, if she saw fit, to sell it; that she took it up on what is called speculation, that is, to make what she could out of it by the sale of it; that when Mr. Sager furnished her with the description of the land, and she made her application to purchase it, nothing at all was said about selling the land to any one, or at all; that she promised to pay Mr. Sager for his services in attending to the matter,—preparing and making the proofs for her,—and expected to do so if she sold the land and made enough out of it; that Mr. Sager told her it would cost her eight hundred dollars to purchase the land from the state and agreed to borrow that amount for her, which he did; this advance was to be secured by a mortgage when the certificate of purchase was issued; that with this borrowed money she paid the state for the land and obtained the certificate of purchase. After the certificate was issued Mr. Sager asked her how much she was willing to take for the land, that he had found a purchaser who was willing to buy it; he did not say what he could obtain for it, but she fixed the price herself at twelve hundred dollars, he to make his commission and secure payment for his services out of whatever sum he might sell the land for over twelve hundred dollars. Through a Mr. Hovey, a real estate dealer, Mr. Sager sold the land to the defendant Walker. Twelve hundred dollars was paid to the defendant Marsh by Sager, out of which she repaid him the money borrowed to pay for the land, and retained the balance. The defendants Marsh and Walker were strangers to each other; no negotiations relative to this land took place between them personally. Mr. Sager was not in any way connected with or acting for the defendant Walker in the transaction.

There is nothing in this evidence upon which it can effectually be insisted in this court that there was any agreement or contract between defendant Marsh and Sager whereby the latter was to acquire any interest in this land. All that the

evidence shows is that Marsh was to pay Sager for his services in attending to the matter for her in the land-office. Payment for these services the defendant Marsh did not expect to make, nor did Sager expect to receive, until the land was sold. The agreement to pay, then, was simply a personal obligation; it did not give Sager any interest in the land. It did not disturb her absolute control over it. She could hold or sell it just as she pleased. Their agreement did not affect the title. This was to vest absolutely in the defendant Marsh, unaffected by the claim of Sager against her for the payment for his services. Their agreement did not involve any action upon her part, or the doing of anything by her whereby any interest in the land, either directly or indirectly, should accrue or be transferred to him.. He had no legal right to compel a sale of the land, and if upon a sale she neglected to compensate him for his services he could not, under any circumstances, assert any right against the land. The only extent to which the title to be secured by Marsh figured, relative to payment for these services, was that payment therefor was to be made to Sager when the land was sold; this merely determined the time for payment; it did not give Sager any interest directly or indirectly in the land.

In *Hafemann* v. *Gross*, 199 U. S. 342, [26 Sup. Ct. 80], an arrangement similar to the one at bar was considered by the court. A party contemplating taking up public land under the Preemption Act of the United States, which contains provisions similar to our act relative to school lands, entered into a contract with a third person whereby he agreed to give said third person one fourth of the proceeds which he might obtain by a sale of the land, after obtaining title from the United States, in consideration of said third party locating him on land and paying one fourth of the expenses in making his final proof. It was insisted that under this agreement the land was not to be acquired by the preemptor for his sole use and benefit, as the federal statute required, but operated indirectly to transfer the title in part to such third party. The court, after discussing the matter fully, holds that such contract vested no interest in the land in such party, concluding (to quote briefly what was said by the court concerning such contract) that "It was simply a promise to pay money in case of a sale by the patentee, the amount of the payment

to be determined by the sum received on the sale. It was a promise which in no event could be enforced against the land. It was only a personal obligation of the patentee. It might never be enforceable against him and could not be except upon his sale of the land. Of course, it would not be contended that a simple promise to pay money by one seeking to acquire title under a homestead was not binding, and if the only effect of the contract is to measure the sum which the patentee agrees to pay by that which he may receive when he sells the land, it cannot be held that a contract has been made for an alienation of the title in whole or in part, or that the land was not acquired for the sole use and benefit of the patentee.''

Neither did the arrangement between Marsh and Sager for the borrowing of sufficient money to make payment for the land give the latter any interest in it, or constitute an agreement for an interest therein. The transaction consisted simply of a loan to be repaid on a sale of the land, or to be secured by mortgage after the certificate of purchase was obtained. It became unnecessary to mortgage because the sale was made immediately upon the issuance of the certificate and obviated it. There is no law which prevents a purchaser from the state from borrowing money with which to make payment for the land under an agreement to mortgage the land to secure its repayment after the certificate of purchase is obtained.

Appellant insists, it is true, that the court should have found, as a necessary inference from all the facts surrounding the purchase by Marsh, that it was for the joint benefit of herself and Sager; that the fact that Sager called her attention to the land, that she was to pay him for his services relative to it, the borrowing through or from him of the money to make payment therefor, and the sale to Walker immediately on obtaining the certificate of purchase showed by necessary inference that an agreement relative to acquiring this land for the benefit of both of them existed. But both of these persons testified positively that no arrangement existed. It was for the trial court to determine what were the facts respecting the matter, and to draw all such inferences as the evidence warranted. All these were determined in favor of the defendant Marsh. In the face of the positive statement of Marsh and Sager that no agreement existed, the court would hardly be warranted in indulging in inferences to the contrary. If their

statements could be considered as equivocal, an inference against the existence of any agreement prohibited by statute and that the defendant Marsh was proceeding in good faith to acquire this land in compliance with the law should be indulged in, rather than that she was proceeding fraudulently and by perjury to acquire title to it, and that Sager was a party to her acts.

Coming now, however, to the main contention of appellant on this appeal. It is provided by section 3495 of the Political Code, among other things, that an applicant to purchase school lands not suitable for cultivation, such as the land in question here—timber land—must state in his affidavit "that he desires to purchase the same for his own use and benefit, and for the use or benefit of no other person or persons whomsoever, and that he has made no contract or agreement to sell the same." It is further provided by section 3515 of the same code that "Certificates of purchase, and all rights acquired thereunder, are subject to sale, by deed or assignment," etc.

It is claimed by appellant that one who applies to purchase school land from the state, must not have in contemplation at the time of the application a sale of the land when he obtains the certificate of purchase; that if he has he does not come within the terms of the section as a purchaser of the land for his own use and benefit, and that as the defendant Marsh when she applied to purchase had in contemplation a sale of the land, if she could obtain a satisfactory price therefor, as soon as she obtained the certificate, her purchase with this object in contemplation was a fraud upon the state rendering her certificate subject to cancellation. In other words, it is contended that the purchase by the defendant Marsh was solely with a view to speculation; that is, with a view of selling it after she obtained the certificate of purchase and could obtain the price she wished. But it will be observed that the code, section 3515, authorizes a sale of the land—a sale of the certificate of purchase which carries the applicant's rights thereto —immediately it is obtained, and we can perceive no good reason why, where the law says the land may be sold when the certificate of purchase is obtained, one may not have in mind, at the time the application to purchase is made, a purpose to do with the land in the future what the law authorizes may then be done. The code provision does not, as does the

federal statute relative to the acquisition of government lands —say timber and stone lands—require the applicant to make oath "that he does not apply to purchase the same on speculation," etc. All that the code requires is that the applicant when he applies to purchase shall do so for "his own use and benefit, and for the use or benefit of no other person," and that "he shall have made no contract or agreement to sell the same." This does not mean that the applicant must go into possession and occupy the land, and personally devote it to the uses of which it is capable. Occupation of the land at the time one applies to purchase school land is only required when it is capable of cultivation. It does not apply when the land is timber land. The provision of the section simply means that when one makes application to purchase he does so with the intention and purpose of deriving whatever profit or advantage may accrue through such purchase for himself alone, as contradistinguished from a purchase for the profit and advantage of some other person. As an element entering into that benefit he may properly have in contemplation a sale of the land at a profit, some time after he has obtained his certificate of purchase, and when the law expressly authorizes such a sale.

While counsel for appellant has argued elaborately the proposition, that a purchase from the state in which the element of speculation enters—the contemplation at the time of purchase of a future sale at a profit when the certificate of purchase is obtained—is a fraud necessitating the cancellation of such certificate, we do not think it necessary to follow that discussion or to pursue this matter any further than to consider the authorities cited both by himself and the respondents, and see if they tend to a solution of the question. These authorities all have reference to the construction given to the provisions of a federal statute relative to the location and purchase of a certain character of government lands,—namely, stone and timber lands. They are pertinent to this inquiry because the federal statute authorizing the location of stone and timber lands contains provisions in some respects identical with, and in all similar in effect to, those of section 3495 of the Political Code, with a special provision against purchase for speculation, which our code provision does not contain.

Our section of the Political Code as it stood prior to the year 1880 contained no provision whatever requiring the applicant to swear that he desired to purchase the land for his own use and benefit and for the use or benefit of no other person, and that he had made no contract or agreement to sell it. It was amended in 1880 to so require, and the provision in that respect was undoubtedly copied from the federal statute providing for the sale of stone and timber lands of the government. This federal act provides as to the purchase of such lands that "The applicant must make oath that he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit; and that he has not directly or indirectly made any agreement or contract in any way or manner with any person or persons whomsoever by which the title which he may acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself."

It will be noted in passing that, while following in the main the federal act, our legislature eliminated the provision therein with reference to speculation. This omission in our statute is significant, but in view of the authorities to which we are presently to call attention comment on it will be unnecessary.

Now, this provision of the federal act, in as far as the purchase of timber lands from the government on speculation was involved, came before both the land department and the federal courts for consideration.

It is claimed by appellant that both the interior department and the federal courts have sustained the contention made by him that a purchase of public lands in contemplation of a future sale for a profit was such a speculation as vitiated the purchase, as not being for the sole use and benefit of the applicant.

In this regard appellant relies on *United States* v. *Bailey,* 17 Land Dec. 468, a decision of Commissioner Smith; *Hawley* v. *Diller,* 178 U. S. 476, [20 Sup. Ct. 986]; *United States* v. *Detroit Timber and Lumber Co.,* 131 Fed. 668.

In *United States* v. *Bailey* and *Hawley* v. *Diller,* the same timber land entries were involved and were held void as being speculative entries. But the entries involved in those

cases were of vast tracts of timber land procured to be located by a land agent named Lohr, working in the interests of one Bailey. He picked up clerks, bartenders, grocerymen, school teachers, lawyers, in a word everybody who was willing to make a location, or to be concerned in it for a consideration. He induced them to make the purchase, telling them that he would buy their claims and give them fifty dollars more than anybody else would. They made the entries solely under the inducement, and he made the payments and had the entrymen convey their claims to Bailey immediately after their entries were made. In *Hawley* v. *Diller,* 178 U. S. 476, [20 Sup. Ct. 986], the timber entries were made by large numbers of sawmill employees for the use and benefit of the Martin-Alexander Lumber Company, and not in good faith to appropriate them to their own use and benefit.

These decisions are not based upon a finding that when the entries were made the entrymen while taking the land for their own use and benefit had in contemplation generally the sale of it in the future for a profit, and hence the entry was speculative under the act, but upon a finding that the entries were made not in good faith or for the use and benefit of the entrymen themselves, but for the use and benefit of certain specified third persons; in the first cases the entries were made under an express agreement with Lohr and for his benefit, or the benefit of Bailey, at a designated profit, and in the last case under a tacit understanding, for the use and benefit of the Martin-Alexander Company. These cases do not support the contention of appellant that because an applicant to purchase has in mind a future sale of the land at a profit when he acquires the title—though he does not apply to purchase it for the use and benefit of some particular person, and has made no contract for its sale—he therefore does not purchase it for his own use and benefit. They are authority only to the proposition that an entry for the benefit of a particular third person, under an express or implied agreement to convey to him upon entry for an advance over the government price, is not for the use and benefit of the entrymen, which is, of course, true. But that is not this case. Here the court found that defendant Marsh did not apply for the land for the use or benefit of any third person, and that she had no contract or agreement to sell the same, which

the evidence sustains, and the real point is, having in contemplation a sale in the future, whether her application to purchase with that contemplation can be said to be for her own use and benefit, and that it can we are satisfied is sustained by two authorities of the federal courts, the only tribunals to which this exact question seems to have been presented. These cases also arose under the Federal Timber Lands Act, the provisions of which, as similar to our own, we have heretofore quoted. These cases are *United States* v. *Budd,* 144 U. S. 154, [12 Sup. Ct. 575], and *Olson* v. *United States,* 133 Fed. 849.

In the Budd case, in construing this statute relative to the purchase of timber land, the court, after reciting the facts (unnecessary to be stated here because the proposition we are concerned with is declared in the quotation we made), said: "It simply shows that Montgomery wanted to purchase a large body of timber lands, and did purchase them. This was perfectly legitimate and implies or suggests no wrong. The act does not in any respect limit the dominion which the purchaser has over the land after its purchase from the government, or restrict in the slightest his power of alienation; all that it denounces is a prior agreement—the acting for another in the purchase. If when the title passes from the government no one save the purchaser has any claim upon it, or any contract or agreement for it, the act is satisfied. Montgomery might rightfully go or send into that vicinity and make generally known or to individuals, a willingness to buy timber land at a price in excess of that which it would have cost to obtain it from the government, and any person knowing of that offer might rightfully go to the land-office and make application and purchase a timber tract from the government."

As we understand this decision, it holds in effect that under the federal statute providing against the entry of land for speculative purposes, or for other than the sole use and benefit of the entryman, it is none the less an entry for his use and benefit under the act, because he makes the entry in contemplation of a future sale to any person who may be willing to purchase when he has secured the title.

In the Olson case the same federal act was under consideration and involved the same proposition. The court there said: "The statute did not limit the dominion which the purchaser

had over the land after its purchase from the government, or restrict in the slightest his power of alienation; the statute only prohibits his entering the land under an agreement whereby he was acting for another; he might make a valid entry of such land though with a view of disposing of the same after he had completed the purchase, providing that at and before the time of such purchase he had not entered into an agreement with another whereby such other should receive any of the benefits of such purchase. . . . What the statute prohibited was not alone a prior agreement that the title, or any part thereof, which the purchaser should acquire should be conveyed to another, but that the land should not be acquired on speculation for the use and benefit of another. We have no hesitancy in holding its true meaning to be that any citizen of the United States may purchase land as therein provided where such purchase is for his own exclusive use and benefit, notwithstanding at the time of the purchase he may have in contemplation a future sale for a profit; what the statute denounces is that a party shall not at the time of the purchase have, directly or indirectly, made any agreement or contract, in any way or manner, with any person or persons, by which the title which he may acquire shall inure, in whole or in part, to the benefit of any person except himself; the application for the land must be made in good faith, for his own exclusive use and benefit, and not as the agent or hireling of another to obtain the land for some one besides himself.''

Under these authorities (and independent of the proposition that as section 3515 of the Political Code authorizes a sale of the land upon issuance of the certificate of purchase it could hardly be considered fraudulent to contemplate doing, when making the application, what the law says may be done in the future) we are satisfied that defendant Marsh had a right when she made her application to purchase this land, to have in contemplation a sale of it for profit at any time after obtaining a certificate of purchase therefor. These authorities, construing the statute of the United States similar in all respects to ours, hold that it is perfectly legitimate and proper to have such a disposition of the land in contemplation when applying to purchase it, and we are not disposed to place upon our code section a different construction than the

United States supreme court has placed upon an act of Congress containing similar provisions. These authorities construe the meaning of the words "use and benefit" in the federal act as imposing no limitation upon the entryman as to the contemplation at the time he makes his entry of a future sale of the land when he has secured the title from the government, and adopting that construction and applying it to similar language in our code provision, it imposed no limitation on the defendant Marsh as to having in contemplation at the time she made her application a sale of the land on obtaining the certificate of purchase. The only limitation upon her right to purchase was that she should not apply for its purchase for the use or benefit of any other person, and should have made no contract or agreement by which the title she might obtain would inure to any person other than herself, and on these matters the court found in her favor.

The only other point made by appellant is that the application of defendant Marsh did not show the necessary jurisdictional facts, and therefore did not make the legal foundation of a right to purchase, and this is based upon her failure, being a female applicant, to show in her affidavit that she was entitled to purchase real estate in her own name as provided by section 3496 of the Political Code. In her affidavit as regards this requirement she stated simply that she was entitled to purchase and hold real estate in her own name. A proper compliance with the section required that she should have *shown* she was entitled to purchase, not simply state the fact that she was. (*Price* v. *Beaver*, 73 Cal. 625, 630, [15 Pac. 356].) She did, however, state the fact, though imperfectly, and as upon the contest it appeared she was an unmarried woman, and hence entitled to hold real estate in her own name, we are not inclined to hold her application void for this imperfection of statement.

The judgment appealed from is affirmed.

Henshaw, J., McFarland, J., Angellotti, J., Shaw, J., and Sloss, J., concurred.