[Civ. No. 483.   Third Appellate District.—November 16, 1908.]

## THOMAS R. DEAN, Appellant, v. ANNA ELIZABETH DUNN, Respondent.

STATE SCHOOL LANDS—APPLICATION BY FEMALE—RIGHT TO "PURCHASE AND HOLD REAL ESTATE."—An application for state school lands, sworn to by a female, which declares that she is "native born, a citizen of the United States, a resident of this state, of lawful age," sufficiently shows "that she is entitled to purchase and hold real estate in her own name," to meet the requirement of section 3496 of the Political Code.

ID.—CONTEST—ACTION BY SUBSEQUENT APPLICANT—PRESUMPTIONS— BURDEN OF PROOF.—When a certificate of purchase has been issued

to a prior applicant upon an application not defective in form, all presumptions are in favor of its validity, as against a subsequent applicant, and when the subsequent applicant, in a contest of the prior application instituted by him, brings action, the burden is upon him to allege and prove facts showing its invalidity, else he must fail, and the prior applicant is entitled to judgment.

ID.—RESIDENCE OF PRIOR APPLICANT—SUPPORT OF FINDING—AFFIDAVIT NOT OVERCOME.—*Held*, that the evidence as to the residence of the prior applicant in the state of California at the time of the prior application is sufficiently proved to sustain a finding of that fact; and that the evidence for the subsequent applicant is not sufficient to overcome the sworn affidavit of the prior applicant as to her residence in the state at that time.

ID.—OCCUPANCY OF LAND—SUPPORT OF FINDING.—*Held*, that the court was justified in finding that there had been no occupation of the land by the plaintiff adversely to the defendant prior to defendant's application.

ID.—PURCHASE OF LAND FOR BENEFIT OF PRIOR APPLICANT—BENEFIT TO HUSBAND.—Where the land was purchased for the benefit of the prior applicant, without any intention to sell the same to anyone, the fact that she intended, after obtaining title, to allow her husband to pasture his sheep on the land does not disclose any intention to violate the law.

APPEAL from a judgment of the Superior Court of Lassen County.    F. A. Kelley, Judge.

The facts are stated in the opinion of the court.

J. H. Stewart, and R. M. Rankin, for Appellant.

Pardee & Pardee, for Respondent.

HART, J.—On September 23, 1905, the defendant made an application in due form for the purchase of certain lieu land, and thereafter the same was received and filed in the office of the surveyor general, and subsequently—on the thirtieth day of April, 1906—was approved by that officer, and on July 6, 1906, the surveyor general, as register of the state land office, issued to her a certificate of purchase, numbered 5257.

On the fifth day of November, 1906, the plaintiff filed in the office of the surveyor general his application to purchase the same land, and at the same time filed a verified protest against said application of defendant, together with a de-

9 Cal. App.—23

mand that the conflicting claims of plaintiff and defendant to purchase said land be referred to the proper court for adjudication. The plaintiff's application having thereupon been filed and numbered 5437, the surveyor general, as *ex-officio* register of the state land office, caused to be issued from his office an order of reference, by which the contest was referred to the superior court in and for Lassen county. Within sixty days after the order of reference (Pol. Code, sec. 3417), the contestant (plaintiff) filed his complaint in said superior court and the defendant made answer thereto.

The court found in favor of the defendant on all the material facts in the case and gave judgment accordingly.

This appeal is by the plaintiff from said judgment, upon a bill of exceptions.

The plaintiff, in his complaint, among other things, alleges: 1. That the statement contained in defendant's application to purchase the land in controversy that she desired to purchase the same from the state under the provisions of title VIII of the Political Code of this state was, at the time made, and still is false and untrue; 2. That her statement in said application that she desired to purchase said land for her own use and benefit, and for the use and benefit of no other person or persons whomsoever, was and is false and untrue; 3. That her declaration in said application that at the time said application was made she was a resident of the State of California was and is false and untrue; 4. That the defendant stated in her application that she was a married woman, but failed to state in said application and affidavit "that she is entitled to purchase and hold real estate in her own name," as required by section 3496 of the Political Code; 5. "That plaintiff alleges the fact to be that the statement contained in said defendant's application to purchase said land, that there was no occupation of said land adverse to any that she had, then and there was and still is false and untrue."

The foregoing averments of the complaint involve all the points urged against defendant's right to purchase said land, and it is here contended that the court's findings upon said points in favor of the defendant are not supported by the evidence.

The application of the defendant filed with the surveyor general for the purchase of the land in dispute reads as follows: ". . . I, Anna Elizabeth Dunn, of Madeline, Lassen

County, do hereby apply to purchase the land hereinafter described, and in support of my application I do solemnly swear that I am native born, a citizen of the United States, a resident of this state, of lawful age. That I desire to purchase from the State of California, under the provisions of Title Eight of the Political Code, the following described land in Lassen County, to-wit: . . . containing 359.97 acres. That there is no occupation of said land adverse to any that I have. That I desire to purchase the same for my own use and benefit, and for the use or benefit of no other person or persons whomsoever, and that I have made no contract or agreement to sell the same. That said land is not suitable for cultivation; that I have not entered any portion of any lands mentioned in section three thousand four hundred and ninety-four of the Political Code (to-wit: the unsold portion of the five hundred thousand acres granted to the state for school purposes, the sixteenth and thirty-sixth sections, and the lands selected in lieu thereof), which, together with that now sought to be purchased, exceeds 359.97 acres; and that said land is not timbered land.'' The said application was sworn to before a notary public.

The plaintiff testified that in the year 1887 he built a dam one hundred and fifty feet long, twenty-six feet high and twenty feet wide on top, on a portion of the land in controversy, ''for the purpose of holding water upon said land as a reservoir, and used the same ever since for stock and irrigation purposes; that he used said reservoir in the reclamation of desert lands, about a quarter of a mile from said dam; that the water held by said dam covers about two-thirds of said forty acres; that there has been water held in said reservoir every year since it was built.'' He declared that there was no other land, except that used for reservoir purposes, embraced in his application which was occupied by him in any way.

The deposition of the defendant was then introduced in evidence by the plaintiff. She stated that when she made her application to purchase the land she was a resident of California, living in Clark's Valley, Lassen county; that in making the application she actually desired to purchase the land for ''our benefit''; that she had no agreement to sell the same, nor any understanding ''with any person whomsoever by which the title I might acquire would go to the benefit of any

person except myself''; that at the time of the application she was married; that at that time she had no other home, but ''regarded Clark's Valley as my home at that time''; that she was under no disability which prevented her from holding property in her own name ''that I know of''; that she had never previously made any other application for school lands in California. On cross-examination she admitted living during her married life of six years at Roop, Nevada, in the winter months, but declared that in the summer she made California her home. She testified that her husband was engaged in the stock business; that he grazed his stock in the summer in Clark's Valley; that she intended, when she filed on the land in dispute, to return to Nevada with her husband after he had finished attending to the grazing of his cattle in Clark's Valley, in November sometime. She also testified that her husband was postmaster at Roop, Nevada; that Roop was not a town, but that a postoffice was located there to accommodate the ''ranch hands'' in the matter of their mail; that her husband was the manager of the ranch upon which the Roop postoffice was located. The witness explained that she meant by the statement that ''I actually desired to purchase the land for *our benefit*,'' that she would probably, upon completing title, permit her husband to graze his sheep upon the land.

Thomas J. Cox, called by plaintiff, testified that he had lived in Clark's Valley for over twenty years; that the home of James Dunn, husband of defendant, was in the state of Nevada in 1905; that Mr. and Mrs. Dunn did not reside in Clark's Valley in the year 1905.

William H. Earl, a witness for the defendant, and a surveyor and civil engineer by profession, testified that he had known Mrs. Dunn for about ten years; that in the month of September, 1905, she was living at Clark's Valley, California. He further testified as follows: ''I know the NW. $\frac{1}{4}$ of SW. $\frac{1}{4}$, Sec. 20, Tp. 36 N., R. 12 E. I heard Mr. Dean's testimony in regard to the size of the dam on that forty. His testimony was approximately correct. I was there in August, 1905, and again, I think, in September last year. There was very little water in the reservoir in 1905; only about two or three acres covered with water. I run contours to ascertain what the area of the reservoir would be if it were full. The area would be about twelve acres. I noticed the pipes through

the embankment. There were no head gates to them. The pipes were covered with dirt at both ends. There were no other improvements on the land.''

The foregoing involves a fair review of the testimony presented by the record covering the principal points in the case.

The most serious point urged against the defendant's right to purchase the land in dispute involves the finding of the trial court that, at the time she made her application to purchase said land, she was a resident of the state of California. But we will first dispose of the other contentions of the appellant.

The defendant's application was not, as contended, fatally defective, in that it omitted to ''show she was entitled to purchase and hold real estate in her own name.'' She declared therein that she was ''native born, a married woman, a citizen of the United States, a citizen of this state, of lawful age.'' The Political Code (section 3496) provides: ''If the applicant is a female, the affidavit must show that she is entitled to purchase and hold real estate in her own name.'' We think the defendant's affidavit was sufficient to meet the requirement of that section. If the facts as therein stated were true, undoubtedly she was entitled at the time of the application to purchase and hold real estate in her own name. Section 3444 of the Political Code contains a similar provision relating to the purchase by a female of swamp and overflowed, salt marsh and tide lands. In *Price* v. *Beaver*, 73 Cal. 625, [15 Pac. 356], the same point was urged against the respondent in that case, she having, with her application to purchase swamp and overflowed land, filed an affidavit almost identical in language to the one here. The supreme court rejected the point, saying: ''There is nothing in this point. The code, as we have seen, says that the affidavit must *show* a female is entitled to purchase, not simply state that fact. The defendant's affidavit fully complied with the law in this respect, and was sufficient.''

The second point urged by the appellant virtually involves all the other vital findings of the court, and, therefore, necessarily, the question of whether the defendant was a resident of California at the time of her application. Counsel for appellant seem to assume that it is the rule in this state that the burden lies with the defendant to prove the truthfulness of all the material averments of her affidavit and that failure

to do so would lose to her the right to purchase the land under her application. But our supreme court has quite recently made it very clear that such is not the correct rule; but that "where the action is begun by the person whose application is second in point of time, the conditions are, or may be, reversed. In order to show that there is any contest to try, he must aver that there is a claim under an adverse application. If he alleges that this was filed prior to his own, and it is not defective on its face, he must overcome the presumption in its favor arising from such priority, by averment and proof of some fact or facts establishing its invalidity. If his own proof shows a prior application by another party and the issuance of a certificate thereon by the surveyor general, and no defect or invalidity appears on the face of these papers, and no outside evidence is given to impeach them, such plaintiff must fail." (*Bieber* v. *Lambert et al.,* 152 Cal. 557, [93 Pac. 94]; see, also, *Risdon* v. *Steyner, ante,* p. 344, [99 Pac. 377], decided on November 14, 1908, by this court.) The case at bar presents the same conditions as existed in the case from which the foregoing excerpt is taken. The action here is brought by the person whose application was second in point of time, and he charges that the application of the defendant is founded on an affidavit whose material averments are false and untrue. "The presumptions that the law has been obeyed, that the first applicant is innocent of the crime of perjury, and that official duty has been properly performed, come to the aid of the defendant." (*Bieber* v. *Lambert,* 152 Cal. 557, [93 Pac. 94].) Besides, the certificate itself is in express terms made *prima facie* evidence of title in the holder (Pol. Code, sec. 3514), and the burden was upon the plaintiff to controvert or overcome the presumptions in favor of defendant by proof introduced for that purpose.

We think the plaintiff signally failed to overcome the presumptions favoring defendant's right to purchase the land in dispute, and that the court found sufficient support from the evidence to uphold the finding that the defendant was a resident of California at the time she filed her application to purchase the land in question. She positively testified that she was a resident of this state at the time, and the witness Earl, who had been in her employ, strongly corroborated her

upon the point. The most significant and potent fact tending to establish her residence to have been in another state when she applied for the purchase of the land is in the admission that her husband was postmaster at Roop, in the state of Nevada, at that time. But an examination of the testimony will show, as we have already seen, that "Roop" was not a town or a village, but merely the headquarters of defendant's husband when, as manager of an extensive "ranch," he found it necessary to be present on that part of said "ranch" situated in the state of Nevada. The "ranch," it seems, was owned by a corporation, and a portion was situated in the state of Nevada, and a portion in California. The postoffice was not, as previously shown, established so much for the benefit of the general public as for the purpose of accommodating the employees of said "ranch." In fact, that appears to have been the exclusive purpose of establishing a postoffice at Roop. It is not shown whether the defendant's husband was a voter in the state of Nevada, nor was any other fact made to appear, other than that Dunn himself was postmaster at Roop, tending to contradict the defendant's positive and unqualified declaration that she was a resident of this state when she made and filed her application. The testimony of a witness named Cox, a cook by occupation, in substance amounted to no more than a declaration that he did not see Mrs. Dunn in Clark's Valley about the time of the filing of her application.

It may be admitted that if the residence of the defendant's husband had been clearly and unmistakably shown to have been at Roop, Nevada, when the application was made by her to purchase the land concerned here, it would have constituted sufficient proof to have established her residence in the state of Nevada. (Civ. Code, sec. 103.) But the proof upon this point is not, as before observed, clear and convincing. He spent almost as much of his time in California as in Nevada. His business called him to both states at different seasons of the year, and we therefore think the plaintiff failed to impeach, by the necessary proof, the statement in defendant's affidavit that she was a resident of California at the time she filed her application to purchase this land.

The plaintiff undertook to show that he had been in the occupancy of a portion of the land in dispute for many years

prior to defendant's application to purchase. The alleged
occupancy consisted in the construction and maintenance for
a time of a reservoir in which to store water primarily in-
tended to be used for irrigating and thus reclaiming certain
adjacent desert lands, "taken up" by plaintiff under the
"Desert Land Act." Since running water on the desert land
from the reservoir, after he "proved up" on said land, many
years ago, he had not used it for irrigating purposes, but only
for the purpose of furnishing water for his stock. He testi-
fied that the reservoir was not inclosed by a fence, and that
other stock-raisers equally with himself had used the water
therefrom for their stock—in fact, the reservoir appears to
have been used in common by all the stock-raisers of the vicin-
ity in which it was maintained. But the witness Earl de-
scribed the condition of the reservoir and the pipes leading
therefrom to be such for many years as to render it of no
practical use. He said that there were no headgates to the
pipes and they were "covered with dirt at both ends." The
court was justified in finding from the testimony of this wit-
ness that there was not and had not been occupation of the
land adversely to defendant.

The appellant further contends that the testimony shows
that the defendant did not desire to purchase the land for
"her own use and benefit, and for the use and benefit of no
other person or persons whomsoever." This contention is
based upon the statement, before referred to, made by the de-
fendant, on her cross-examination, that "in making this ap-
plication I actually desired to purchase the lands for *our*
own benefit." The defendant in the same connection de-
clared: "I had at the time no agreement to sell the same, and
have had none since. I had no understanding with any per-
son whomsoever by which the title I might acquire would go
to the benefit of any person except myself." We have al-
ready seen that she explained that portion of her statement in
which she used the expression "our benefit," and the ex-
planation seems to have been satisfactory to the trial court.

We think that there is absolutely no room for doubting the
sufficiency of the evidence to support all the material findings
of the trial court. It was, as we have pointed out, incumbent
upon the plaintiff, under the pleadings here, in order to sus-
tain his complaint, to impeach the truth of the essential aver-

ments contained in the affidavit accompanying defendant's application to purchase this land. He failed to sustain the burden thus resting upon him.

The judgment, for the reasons set forth herein, is affirmed.

Chipman, P. J., and Burnett, J., concurred.